## 35115. FIRST AMERICAN BANK v. BISHOP.

HILL, Justice.

Lamar Bishop was the maker of several promissory notes to the First American Bank. His father, Alton Bishop, the plaintiff in this case, signed separate guaranties on the notes. Lamar Bishop was adjudicated bankrupt in early 1975, discharging him on a $26,474.90 debt owed the bank. Subsequently, both Bishops signed a promissory note and plaintiff Alton Bishop signed a separate guaranty as to Lamar Bishop's debts to the bank.

Alton Bishop brought an action in equity to cancel the last note and guaranty signed by him in face amounts

---

[1]This testimony was brought out for the first time on cross examination.

of $26,474.90 each and seeking punitive damages and attorney fees. Plaintiff alleged fraud and confidential relationship. The bank's motion for summary judgment was denied and that order was affirmed on appeal. *First American Bank v. Bishop,* 239 Ga. 809 (239 SE2d 19) (1977). At trial, the jury found for plaintiff as to cancellation of the note and guaranty and awarded him $10,000 in attorney fees. The trial court entered judgment cancelling plaintiff's obligations to the bank. The bank appeals, enumerating three errors, including the sufficiency of the evidence.

1. The plaintiff's evidence presented at trial was as follows: Plaintiff's daughter-in-law's brother was senior vice-president of the bank. Plaintiff had guaranteed his son's loans from the bank. After the son went bankrupt, the vice-president called plaintiff to come into the bank the last week in April, 1975, at which time plaintiff signed a blank promissory note. According to plaintiff it was agreed between them that the note would be filled in for $5,000.

The next week plaintiff returned to the bank. The bank officer filled out a financial statement based on plaintiff's answers to certain questions and it was agreed that plaintiff would pay $100 per month on the $5, 000 note. Plaintiff said that he would prefer to pay $1,200 for a year in advance rather than $100 per month. The officer typed the $1,200 check while his secretary typed the $100 per month payment agreement. The bank officer paperclipped the papers together, with the financial statement on top, and held them and turned the pages while plaintiff signed both. Plaintiff did not read the second agreement. It turned out that the agreement he signed was a guaranty for $26,474.90 on Lamar Bishop's debts.[1] The blank note was filled in for $26,474.90 also.

---

[1] The bank argues on the other hand that plaintiff was already obligated on a $20,000 guaranty and that reducing his obligation to $5,000 makes no sense. The bank contends that plaintiff agreed to the $26,474.90 obligation in order to obtain an extention of time to repay the bank.

Plaintiff's evidence presented two separate legal theories. As to the blank note, the theory was that it was completed in an unauthorized and fraudulent manner warranting cancellation. Code Ann. §§ 109A-3—115, 109A-3—407. As to this theory, the confidential relationship contended for is irrelevant.

As to the guaranty, the theory was that plaintiff was excused from reading it under the circumstances and due to an alleged confidential relationship between plaintiff and the bank officer, and that having been procured by fraud, it should be cancelled. As to the guaranty, the confidential relationship contended for is relevant.

In addition to the fact that the bank officer was the brother of plaintiff's daughter-in-law, the evidence showed that the bank officer solicited plaintiff and induced him to place his business with the bank, and that the officer promised to keep his affairs confidential and to treat plaintiff right. This is insufficient to create a confidential relationship. As we said in *First American Bank v. Bishop,* supra, "A confidential relationship does not arise between a bank officer and the bank's customer merely because they are brothers-in-law and have had loan transactions in the past." See also *Cochran v. Murrah,* 235 Ga. 304 (219 SE2d 421) (1975); Code Ann. § 37-707.

If plaintiff were to rely on the theory of misleading artifice or device as reasonably preventing him from reading the guaranty (an excuse from the requirement of reading which has been said to exist independently and apart from the confidential relationship excuse, *Morrison v. Roberts,* 195 Ga. 45 (1) (23 SE2d 164) (1942)), he could not prevail. See *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788) (1940); *B. E. Robuck, Inc. v. Walker,* 212 Ga. 621 (94 SE2d 696) (1956). The guaranty in issue in this case was a printed form with the word "Guaranty" prominently displayed at the top. If plaintiff had even glanced at this agreement he would have seen that caption and the figures $26,474.90 and not the figures $5,000 and $100 per month. Paraphrasing what was said in *Tinsley v. Gullett Gin Co.,* 21 Ga. App. 512, 517 (94 SE 892) (1917): Even the most casual and indifferent notice of the instrument he was about to sign would have instantly and

unmistakably disclosed the truth.

From what has been said above, it follows that the jury's verdict as to the promissory note is supported by the evidence and it should be cancelled insofar as Alton Bishop's liability thereon is concerned, but the verdict as to the guaranty is not supported by the evidence and it should not be cancelled.

2. In view of our determination that plaintiff continues to be liable on the guaranty, the jury's award of attorney fees is contrary to law and must be set aside. See *C. & S. Nat. Bank v. Bougas,* 149 Ga. App. 722, 728 (256 SE2d 37) (1979).

3. Defendant enumerates as error the failure of the judgment entered by the trial court to conform to the verdict of the jury. Code Ann. § 110-301. In his charge, the trial court instructed the jury that the only note and guaranty in issue were the $26,474.90 note and guaranty.[2] The jury verdict cancelled only the note and guaranty in issue pursuant to the charge of the trial court. Nevertheless, the judgment entered by the trial court cancelled plaintiff's obligations to defendant.[3]

Plaintiff argues that the fraudulently obtained $26,474.90 note and guaranty, being cumulative, cancelled all previous guaranties. We have already determined that the evidence is insufficient to show that the $26,474.90 guaranty was fraudulently obtained. It remains in effect. The mere taking of a voidable note does not, without more, extinguish a previous, valid obligation

---

[2]"I charge you that the only note and guaranty at issue in this case is the note of Lamar Bishop and Alton Bishop, dated May 2, 1975, and the guaranty executed by Alton Bishop, dated May 2, 1975. There is no contention made by the plaintiff in his complaint that any other notes or guaranties are void or illegal for any reason." This charge was consistent with the allegations of the complaint and the court's pretrial order approved on behalf of the parties. Plaintiff's exception to this charge was overruled and he has not cross appealed.

[3]This would include the $20,000 guaranty the bank claimed to have but which plaintiff did not recall having signed.

which remains unpaid. *Blackshear Mfg. Co. v. Harrell,* 191 Ga. 433 (2) (12 SE2d 328) (1940); *McEachern v. Coastal Plain Production Credit Assn.,* 221 Ga. 335 (144 SE2d 516) (1965).

Under the charge of the court, the jury verdict cancelled the plaintiff's obligation on the $26,474.90 note. The judgment went beyond the verdict of the jury, cancelling all plaintiff's obligations to defendant. This case must be remanded for a judgment only cancelling plaintiff's obligation on the $26,474.90 note.

*Judgment affirmed in part and reversed in part; remanded with direction. All the Justices concur.*

ARGUED JULY 11, 1979 — DECIDED SEPTEMBER 10, 1979 — REHEARING DENIED SEPTEMBER 25, 1979.

*George C. Kennedy, Jr., George C. Kennedy,* for appellant.

*Elliott & Turner, Tyron Elliott,* for appellee.