61699. CURTIS v. FIRST NATIONAL BANK OF COMMERCE.

QUILLIAN, Chief Judge.
The plaintiff/appellee brought this action in the Franklin Superior Court seeking to recover the sum owed on a promissory note in the principal amount of $40,000. The action was brought against five defendants, the directors of the corporation which incurred the debt on which the promissory note was based. The five defendants, as directors, had endorsed a section on the reverse side of the note entitled "Guaranty of Payment."

The appellant, who was one of the five named defendants, filed an answer and a counterclaim. The two major grounds urged in defense of the note were that the instrument had been obtained by fraudulent misrepresentations and that there had been a material alteration of the note. The plaintiff moved for summary judgment based on affidavits which established the execution of the note by the defendants and that the note was in default because of failure to make timely payments thereon. Depositions were taken and both

sides filed briefs addressed to the issue. The cause came on for hearing and the trial judge found for the plaintiff and entered summary judgment in its favor and against the present defendant/appellant. Appeal was then taken to this court. *Held:*

1. The defendant urges that summary judgment should not have been granted because there was evidence showing that the defendant had been fraudulently induced to execute the note. It is argued that at the time of the negotiations with the executive officer of the bank that he made certain specific representations and promises with regard to the order in which the guarantors would be held liable on the note. Furthermore, defendant asserts the directors had agreed that the money was to be loaned for the express purpose of financing the purchase of five tractors and trailers, that the president of the bank stated that this was the express purpose of the loan and it was further agreed by the plaintiff bank and the directors of the corporation that no funds were to be released to the officers of the corporation until the bank had acquired a valid security interest in the equipment to be purchased. It is contended that this agreement had been knowingly violated by the plaintiff bank.

Under the "Guaranty of Payment" provision the following pertinent terms may be found: "To the Holder of the Note on the reverse side hereof: I guarantee the payment of the Note on the other side of this paper. I also agree to pay any expenses (including attorneys' fees) you may incur in trying to collect the Note, and any expenses you may incur in trying to collect this Guaranty from me (including attorneys' fees of 15% of the amount sought to be collected if you have to collect this Guaranty through an attorney at law). I understand and agree that you may: 1. extend or renew the Note, whether or not for a period longer than the original term of the Note, and/or 2. surrender, compromise, substitute or exchange any property in which you may have a security interest securing repayment of the Note, and/or 3. release or reach a compromise with any party who may be liable on the Note, without giving me notice or obtaining my consent, and such actions will not release me from liability on this Guaranty. You may sue me on this Guaranty: (a) whether or not you sue at the same time anyone else liable on the Note or on a guaranty of the Note; and (b) whether or not you have tried to collect the amount due under the Note from anyone else liable on the Note or a guaranty of the Note; and (c) whether or not you have realized on any property in which you may have a security interest if more than one person signs this Guaranty, we understand that we are each liable for the full amount of this Guaranty."

Absent special circumstances not present in the case sub judice, there is no confidential relationship between a bank and those with

whom it deals. *Limoli v. First Ga. Bank,* 147 Ga. App. 755, 758 (250 SE2d 155); *First American Bank v. Bishop,* 244 Ga. 317, 319 (260 SE2d 49). A party to a contract who can read must read or show a legal excuse for not doing so and ordinarily, if fraud is the excuse, it must be such fraud as to prevent the party from reading. *Martin v. Alford,* 214 Ga. 4, 7 (102 SE2d 598). The defendant in this case was not prevented from reading the terms of the contract.

It should be further noted that fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjectures as to future events. *Cheney v. Barber,* 144 Ga. App. 720, 721 (242 SE2d 358).

"A promissory note is an unconditional contract of the maker (appellant) to pay the holder (appellee) according to the tenor of the instrument. Code Ann. § 109A-3—413 (1). The note being an unconditional promise, the contract is complete as written; parol evidence may not be used to impose conditions which are not apparent from the face of the note. An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto relating to a condition not expressed in the note is incompetent to change the contract as represented on the face of the note." *Whiteside v. Douglas County Bank,* 145 Ga. App. 775, 776 (245 SE2d 2). Evidence as to an alleged understanding which is antagonistic to and inconsistent with the terms of the instrument is inadmissible to vary such terms and legally insufficient to sustain a defense of fraud. *Auerbach v. First Nat. Bank,* 147 Ga. App. 288 (248 SE2d 551); *Cobb Bank &c. Co. v. Henry,* 246 Ga. 225, 227 (271 SE2d 444). From the provisions of the "Guaranty of Payment" which we have quoted, supra, the purported statements and the agreements upon which the defendant relies clearly conflict with the express terms of the contract. Therefore, the defendant failed to introduce evidence to sustain his defense of fraud.

2. The promissory note contains the following language: "Purpose[:] To finance 5 tractors and 4 trailers listed below." The words "listed below" were stricken by a line being drawn through them. No vehicles were listed below in the contract. The defendant contends that this constitutes a material alteration within the meaning of Code Ann. § 109A-3—407 (Ga. L. 1962, pp. 156, 259). This section provides: "(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number or relations of the parties; or (b) an incomplete instrument, by completing it otherwise than as authorized; or (c) the writing as signed, by adding to it or by removing any part of it. (2) As against any person other than a subsequent holder in due course (a) alteration by the holder which is

both fraudulent and material discharges any person whose contract is thereby changed unless that party assents or is precluded from asserting the defense; (b) no other alteration discharges any party and the instrument may be enforced according to the authority given. (3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed."

Did an alteration in the contract guaranteed serve to alter the contract of guaranty? In *Peppers v. C. & S. Nat. Bank,* 127 Ga. App. 16, 18 (192 SE2d 409) the appellee insisted: "That since the *language* of the contract of guaranty *on the back of the note* had not, itself, been changed or altered, there was, therefore, no change authorizing the defendant's discharge." This Court held: "This position is untenable under the statute. A change in the contract guaranteed is a change in the contract of guaranty." Relying on this authority, therefore, we consider whether the alteration in the present note falls within the prohibition of Code Ann. § 109A-3—407 (Ga. L. 1962, pp. 156, 259).

As against one not a holder in due course, for a party to be totally discharged by virtue of an alteration of an instrument subsequent to his signing, four criteria must be met: 1) it must change his contract, 2) it must be significant or material, 3) it must be fraudulently made, and 4) it must be made by the holder. 2 Bender's UCC Service 12-99, § 12.25[1], Commercial Paper. It is therefore clear that we must first determine whether the contract was changed insofar as the defendant is concerned and whether such change was significant or material — for the alteration must be both material and fraudulent in order to discharge the defendant.

The Official Code Comment for UCC § 3-407 sets out: "[a]ny alteration is material only as it may change the contract of a party to the instrument; and the addition or deletion of words which do not in any way affect the contract of any previous signer is not material. But any change in a contract of a party, however slight, is a material alteration. . . ." In *Franco v. Bank of Forest Park,* 118 Ga. App. 700, 705 (165 SE2d 593), this Court pointed out that certain notations on the note did not alter or change "the obligations of the note itself, and absent that, the alteration does not operate to discharge the parties from their obligations."

In the case sub judice, in the "Guaranty of Payment" the defendant agreed that the plaintiff bank could "surrender, compromise, substitute or exchange any property in which you [the bank] may have a *security interest* securing repayment of the note . . ." See *Dunlap v. C. & S. DeKalb Bank,* 134 Ga. App. 893, 896 (216 SE2d 651). Therefore, the deletion of the words "listed below" could not possibly have materially altered the terms of the contract since

the defendant had already yielded to the defendant bank any rights regarding the security which this language might refer to. Since we have determined that this was not a material alteration within the purview of Code Ann. § 109A-3—407, the defendant failed to raise an issuable defense and the trial judge did not err in granting plaintiff's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED APRIL 24, 1981.

*Edward W. Clary,* for appellant.
*John Terry Brown,* for appellee.