**ALTERNATIVE TRAVEL, INCORPORATED, Plaintiff–Appellant, Cross–Appellee,**

v.

**WORLDSPAN L.P., Defendant–Appellee, Cross–Appellant.**

Nos. 00–2179, 00–2263.

United States Court of Appeals, Sixth Circuit.

Dec. 6, 2002.

694

Before BATCHELDER, COLE, and GIBBONS, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Plaintiff–Appellant, Cross–Appellee Alternative Travel, Inc. ("ATI") appeals the district court's grant of summary judgment in favor of Defendant–Appellee, Cross–Appellant Worldspan, L.P., in this fraudulent-inducement-of-contract action.

ATI is a travel agency. Worldspan is a company that owns a computer registration system ("CRS") which travel agencies use to book registrations for customers. ATI entered into a contract wherein ATI agreed to pay a monthly access fee to Worldspan in exchange for the use of its CRS. When ATI refused to pay the monthly charge, Worldspan threatened to terminate service. ATI filed a motion for a preliminary injunction, and Worldspan filed a counterclaim for breach of contract.

ATI appeals the grant of summary judgment in Worldspan's favor and the award of damages to Worldspan. With regard to the grant of the motion for summary judgment, ATI contends that the district court erred in its findings regarding the governing contract law, and also erred when it allowed Worldspan to file motions after the scheduled deadline. ATI also argues that the damages awarded to Worldspan should not have been awarded because Worldspan did not offer proof of damages, Worldspan counter appeals on the issue of whether the district court erred in holding that ATI satisfied Rule 11's safe–harbor provision, thereby insulating itself from sanctions.

For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

ATI is a travel agency located in Detroit, Michigan. Worldspan is a corporation that provides travel agencies with a CRS, which enables those agencies to book reservations with airlines, hotels, and car rental facilities. At about the time that ATI's contract was up for renewal, in late 1994, ATI received a new proposed subscriber agreement from Worldspan account executive Glenda Moton.

On January 18, 1995, L. Fallasha Erwin, chairman and principal owner of ATI, faxed a letter to Moton listing the problems that ATI had with the proposed contract. One of the items included among these concerns was whether ATI would "get segment credit for passive bookings." In a segment–based contract, the more segments that are booked, the lower the monthly lease rate is for the reservation equipment. ATI wanted two local wholesalers to be included in the system to increase the monthly discount to the lease rate. The letter from ATI stated that it was ATI's "understanding that the system will allow direct booking with Hamilton, Miller and Keytours. Booking with those two entities will be passive since they do their own ticketing."

On February 2, 1995, Erwin mailed the signed contracts to Worldspan. In the accompanying cover letter, Erwin stated, "Our primary basis for executing that contracts is our understanding that Worldspan will shortly include wholesalers HMHF [Hamilton, Miller] and Key Tours for which we can get segment credit although our agency will not be doing the ticketing for packages booked." Erwin went on to state that, "[a]lthough my signature appears on the contracts, the terms of the contracts were not totally agreeable to us." ATI alleges that Moton made representations that the local wholesalers would be added to the system shortly after the execution of the contract.

The contract signed by Erwin contains a merger clause. This clause, found at paragraph D for Section 19 of the contract, states:

> This Agreement constitutes the full and final agreement between the parties on the subject matter, and any prior agreements are hereby superseded. This Agreement may not be modified, altered or amended except by a further written document signed by authorized representatives of both parties.

When Worldspan began billing ATI on a monthly basis, ATI noticed that it was not receiving credit for passive bookings as it alleges it had been promised. As a result, ATI began making payments to Worldspan below the amount for which it was being billed.

Because it was receiving only partial payments, Worldspan informed ATI that it was prepared to terminate service due to ATI's failure to pay past invoices in full. ATI protested, claiming that it was not receiving certain booking credits and was entitled to a larger productivity discount. Worldspan temporarily agreed not to discontinue service while it looked into ATI's contention.

Worldspan and ATI then corresponded at length in an attempt to settle the disagreement, but these efforts were to no avail. On February 5, 1999, the credit and collections department of Worldspan sent ATI a letter informing ATI that Worldspan had elected to terminate service. Worldspan postponed this action in response to another request by Erwin to consider his claim.

Kim McGlinn, District Sales Manager at Worldspan, next sent a letter to ATI on March 31, 1999 confirming the past due amount of $11,808 and stating that the charges were determined to be accurate. This letter also indicated that Hamilton, Miller had in fact been added as a vendor in November of 1998. After two more attempts at settlement, service was terminated.

ATI filed suit on April 30, 1999, in the Wayne County Circuit Court, requesting a preliminary injunction that would require Worldspan to continue providing service to ATI. Worldspan filed a counter claim for breach of contract, claim and delivery, and conversion, and successfully removed the case to federal court. The district court denied ATI's motion for a preliminary injunction.

The district court did, however, grant ATI's motion for leave to amend its complaint. On October 6, 1999, ATI filed an amended complaint requesting an injunction that would require Worldspan to reconnect services. The amended complaint also included claims of racial discrimination in violation of 42 U.S.C. § 1981, and requested compensatory damages in the amount of $1 million and punitive damages in the amount of $2 million.

This allegation led Worldspan to serve Erwin, a licensed attorney who was also functioning as ATI's legal counsel, with a motion for Rule 11 sanctions on June 5, 2000. Rule 11 provides that such a motion "shall not be filed with or presented to the

court unless, within 21 days after service of the motion ... the challenged [allegation] is not withdrawn or appropriately corrected." FED. R. CIV. P. 11(c)(1)(A). Pursuant to this safe-harbor provision, Worldspan enclosed a letter along with the motion noting that the motion would not be filed with the court for twenty-one days. ATI attempted to withdraw this claim by sending Worldspan's counsel a notice of dismissal on June 26.

The district court set a deadline of June 26, 2000 for the filing of motions. Worldspan filed its motions for summary judgment and sanctions with the court on June 27, before 8:30 a.m. On July 7, 2000, ATI filed a motion to strike Worldspan's motions as untimely filed. The district judge denied the motion to strike at a hearing on August 16. On August 30, 2000, the district court granted Worldspan's motion for summary judgment. The district court based its ruling on the merger clause in the contract, stating that because the terms of the contract were unambiguous, parol evidence was not admissible. The court also noted that the motion for summary judgment could additionally be granted on the ground that a claim for fraudulent representation fails when it is based upon a representation as to a future occurrence. The court went on to enter judgment for Worldspan for damages resulting from ATI's breach of contract. With regard to Worldspan's motion for sanctions, the court found that ATI was timely in its attempt to dismiss the § 1981 claim.

ATI now appeals from the district court's grant of Worldspan's motion for summary judgment, the district court's decision to allow Worldspan to file its motion for summary judgment and its motion for sanctions, and the district court's award of damages to Worldspan. Worldspan cross-appeals the district court's denial of its motion for sanctions.

## II. ANALYSIS

### Motion for Summary Judgment

This Court reviews de novo a district court's grant of summary judgment. *See Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 409 (6th Cir.1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, a "mere scintilla" of evidence is not sufficient; the evidence must be such that a reasonable jury could find in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The contract at issue in this case specifically states that it is to be governed by the laws of the state of Georgia. ATI cannot prevail on a fraudulent-inducement claim because, in Georgia, fraud cannot be found with respect to a future promise.

Georgia courts have held that the representations supporting a claim of fraud "must relate to an existing fact and not a future event, unless it be an event which the party making the representation knows will never occur. Mere broken promises, unfulfilled predictions, and erroneous conjectures do not meet this test." *Am. Food. Servs. v. Goldsmith*, 121 Ga. App. 686, 688, 175 S.E.2d 57 (1970) (citations omitted). *See also Curtis v. First Nat'l Bank of Commerce*, 158 Ga.App. 379, 381, 280 S.E.2d 404 (1981) (stating that

"fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjectures as to future events"); *Riddle v. Driebe*, 153 Ga.App. 276, 281, 265 S.E.2d 92 (1980).

The most appropriate case for demonstrating this principle is *Cone Mills Corp. v. Estes, Inc.*, 399 F.Supp. 938 (N.D.Ga. 1975). Here, one of the parties claimed that he was induced to sign the contract, which contained a merger clause, because of an allegedly fraudulent misrepresentation by the other party that it would later sign a written contract reflecting an oral agreement the parties had. *Id.* at 943.

The court noted that parol evidence is admissible to show that a contract, though facially valid, was void because of fraud in its procurement. *Id.* More importantly, the court held that "actual fraud can only arise when representations relate to then existing or past facts, and cannot be predicated upon statements which are merely promissory in nature referring to future acts or events." *Id.* at 944 (citations omitted). As such, there could be no fraudulent inducement as to the particular contract at issue, which contained a merger clause. *See id.* at 945.

Georgia law, therefore, is that parol evidence is admissible to demonstrate fraud, even when a contract contains a merger clause, if the alleged misrepresentation that induced entry into the contract does not relate to a future event. However, if the alleged misrepresentation is a promise or a statement about a future occurrence, parol evidence is not available to the party contending to have been fraudulently induced.

Despite ATI's protests to the contrary, there is no issue of fact regarding whether this alleged misrepresentation spoke to a future event. It was undoubtedly a future promise. Erwin's own letter to Worldspan stated, "Our primary basis for executing the contracts is our understanding that Worldspan *will shortly include* wholesalers HMHF and Key Tours for which we can get segment credit." (Emphasis added).

ATI characterizes the promise that it claims to have received from Worldspan as a contemporaneous, rather than a future, occurrence. ATI states that "[t]he addition of the two wholesalers was an occurrence that was presently scheduled to take place in 1995." This attempt to demonstrate that the representation was not a future promise is utterly without merit, and is belied and plainly contradicted by ATI's own arguments.

First, the fact that a matter is under consideration can not mean that it is a currently existing fact for the purposes of a fraud claim. Worldspan did not falsely represent to ATI that it had already agreed to include Hamilton, Miller and Key Tours in its service. Allowing ATI to contort this promise of future performance in such a manner would render the concept of a promise of future performance completely meaningless, as any future promise could be construed in the same illogical manner.

Furthermore, in its original brief, in which the issue of future promise was not addressed, ATI itself noted that its letter that accompanied the return of the executed contract stated that the willingness to execute the contract was "based upon the representation that, *in a very short period,*" the local wholesalers would be added. (Emphasis added). ATI also asserts that Moton, Worldspan's agent, gave assurances to ATI that "the wholesalers would be added to the systems shortly."

We also find no merit to the argument that if the promise is supposed to occur in the very near future, it is properly viewed as an existing fact. There cannot possibly be any genuine issue of material fact regarding whether Worldspan's representations about the addition of the local

wholesalers to their system was a future promise to perform. Even by ATI's own terms, it was indeed such a promise. The contention that it was anything but is disingenuous.

In the alternative, ATI argues that a misrepresentation that is a future promise does not foreclose a fraud claim if the promise was known to be false when it was made. Georgia law indeed so provides. *See, e.g., Sofate of Am., Inc. v. Brown,* 171 Ga.App. 39, 41, 318 S.E.2d 771 (1984) (stating that while the general rule is that actionable fraud cannot be predicated upon promises to perform in the future, an exception exists where the promise was made with a present intent not to perform or where the promisor knew that the future event would not take place). There is no evidence, however, that Worldspan knew the promise would not take place. Accordingly, ATI's claim in this regard fails.

ATI presents no evidence whatsoever that Worldspan knew that the future event would not take place, and no evidence that Worldspan had no intent to perform. In fact, the record indicates that Hamilton, Miller was eventually added to Worldspan's service. A bald assertion by ATI that Worldspan knew the future event would not occur, and that Worldspan intended not to perform, is insufficient to create a genuine issue of material fact.

ATI also points to evidence in the record that Moton received ATI's letter noting its problems with the proposed contract, and inserted handwritten comments. These comments included writing the word "yes" by the question of whether ATI would get credit for passive bookings for the two local wholesalers. However, there is no evidence, nor even a claim by ATI, that a copy of this letter with the handwritten comments was ever sent to ATI. Since Moton wrote "yes" by the relevant question, yet never sent the letter back to ATI

with the responses, she would have had no incentive to make a misrepresentation on that particular document. As such, the handwritten notes are clear evidence that Worldspan actually did intend to add the wholesalers to the service. This only reinforces the point that ATI has no factual basis for its contention that Worldspan knew that its representation would not occur. The handwriting on the document supports the notion that, at worst, this is an instance of a non-fraudulent mistake or broken promise. In fact, ATI even argues in its brief that Moton's "notations on the correspondence from ATI clearly demonstrates [sic] that she thought ATI was to receive credit for passive bookings with Hamilton, Miller and Keytours." ATI is correct, and since Worldspan believed this representation to be accurate, fraud cannot be found. While this is indeed a question of fact, there is no genuine issue as to this fact. ATI has presented no evidence indicating that the promise was known to be false at the time it was made, and there is significant evidence in the record indicating that it was not known to be false. The grant of summary judgment for Worldspan is therefore affirmed.

### Worldspan's Late Filings

ATI also contends that the district court erred when it permitted Worldspan to file both its motion for summary judgment and its motion for sanctions after the court-imposed deadline. The court set a deadline of June 26, 2000, for the filing of motions. Worldspan did not file its motion for summary judgment and motion for sanctions until June 27, 2000. The motions were indeed filed one day late, at 8:24 and 8:26 a.m. Fed.R.Civ.P. 6(b) governs enlargements of time for filings.

The district court has wide discretion in these matters. The Second Circuit has stated that "mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect'

justifying relief under Rule 6(b)(2)." *Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2nd Cir.1998). The Fifth Circuit has emphasized that the district court is to be granted broad discretion to expand the filing deadline. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir.1995) (finding that the district court's acceptance of a motion one day late was "perfectly reasonable"). As such, we do not find that the trial court abused its discretion in permitting the filing of these motions.

### Rule 11 Sanctions

Section 1981 states, in pertinent part. that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. The amended complaint alleged that the contract and services were terminated because ATI was owned by an individual of African–American descent. The district court ruled in favor of ATI on the motion for sanctions, finding that ATI attempted to withdraw the § 1981 claim within the 21–day safe-harbor period provided in Rule 11. FED.R.CIV.P.11(c)(1)(A). This Court has held that it is to review all aspects of a court's Rule 11 determination for abuse of discretion. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citation omitted). Worldspan details the efforts of ATI to obtain discovery on the § 1981 claim after the point in time when ATI attempted to dismiss it in order to demonstrate that ATI withdrew the claim "with its fingers crossed." Such activity on the part of ATI is irrelevant. Seeking discovery on a claim one has attempted to dismiss may be irrational, unproductive, and frustrating for opposing counsel, but it does not provide a basis for Rule 11 sanctions here. We find no abuse of discretion on the part of the district court in dismissing the claim for sanctions against ATI.

### The Award of Damages to Worldspan

The district court granted Worldspan's counterclaim in the amount of $12,675.30, which was the outstanding unpaid balance, plus interest. Section 13(c) of the contract stipulates, "Customer shall reimburse WORLDSPAN for any costs incurred by WORLDSPAN to collect amounts due under the Agreement including, but not limited to, reasonable attorneys' fees and court costs." Thus, the court also stated that Worldspan should have an opportunity, in addition, to file for costs "together with the appropriate affidavits for costs and attorneys' fees."

ATI contends that the district court erred in awarding damages on summary judgment, arguing that there existed genuine issues of material fact regarding the appropriate amount of the award. ATI argues that the mere denial of the arrearage by ATI should have put at issue the amount owed and whether the charges were appropriate. However, ATI points to nothing in the record as evidence that it had a factual, evidentiary basis for disputing the amount. Its basis for disputing the arrearage appears to be its claim that Worldspan failed to add Keytours and Hamilton, Miller to the service, a contention discarded prior to the damages stage. Worldspan, on the other hand, submitted an affidavit to establish its damages. As such, the trial court did not overlook any genuine issue of material fact in its award of damages to Worldspan. Thus, we affirm the trial court's award of damages.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.