**FOURTH DIVISION**
**DOYLE, P. J.,**
**DILLARD and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 14, 2014**

# In the Court of Appeals of Georgia

A13A2472. STRAUS et al. v. RENASANT BANK et al.

BOGGS, Judge.

Barry and Denise Straus appeal from the trial court's order granting summary

judgment in favor of Renasant Bank and Anthony Stancil in this case involving their

liability as guarantors of a real estate acquisition and development loan obtained by

Interstate South, LLC.[1] They contend that the trial court erred because (1) the

*D'Oench Duhme* doctrine[2] does not preclude their defenses and counterclaim; (2) the

---

[1] We note that there are three additional cases pending in this court involving Renasant, Stancil, the Strauses, and other guarantors of a different loan obtained by a different LLC of which the Strauses were also members. See Court of Appeals Case Nos. A14A0395, A14A0396, and A14A0424. Many of the underlying facts in these cases differ from the present appeal.

[2] See *D'Oench, Duhme & Co. v. FDIC*, 315 U. S. 447 (62 SCt 676; 86 LE 956) (1942).

*D'Oench Duhme* doctrine does not preclude their tort claims against Stancil individually; (3) genuine issues of material fact preclude the award of summary judgment on the alternative grounds relied upon by the trial court; and (4) the trial court lacked jurisdiction to enter a final money judgment in Renasant's favor after the Strauses filed a notice of appeal. For the reasons explained below, we affirm.

Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party." (Footnote omitted.) *Melman v. FIA Card Svcs.*, 312 Ga. App. 270 (718 SE2d 107) (2011). So viewed, the record shows that Interstate South, LLC, had six members, including the Strauses. Beginning in 2004, Interstate South borrowed funds from Crescent Bank and Trust Company ("Crescent") in order to purchase undeveloped land in Pickens County, Georgia. On February 10, 2009, the loan was renewed in the amount of $1.5 million with a maturity date of June 10, 2009. Members of Interstate South, including the Strauses, were required to sign a personal guaranty of the note at the time of this renewal. On February 25, 2009, Stancil, as the executive vice-president of Crescent, notified Interstate South that the note would not

2

be renewed again unless Interstate South made a principal reduction of ten percent at or before the date of maturity.

On February 2, 2010, Crescent filed suit against Interstate South and its six members, including the Strauses, for breach of the note and the individual guaranties. Based upon Interstate South's failure to file an answer, the trial court entered a default judgment against it on June 17, 2010, in the amount of $1.5 million plus interest and attorney fees totaling over $370,440.

The Strauses filed a timely answer in which they asserted a counterclaim against Crescent and a third-party complaint against Stancil. In their answer, they admitted that they executed the guaranties attached to Crescent's complaint. The Strauses asserted the following defenses against Crescent: failure to state a claim; promissory estoppel; condition precedent; breach of fiduciary duty; prior breach of contract under which Crescent sought to recover; and fraud and deceit. The Strauses asserted breach of contract and rescission in their counterclaim against Crescent, and identical claims for breach of fiduciary duty, fraud and deceit, and attorney fees in their counterclaim against Crescent and their third party complaint against Stancil.

On July 23, 2010, Crescent was closed by the Georgia Department of Banking and the Federal Deposit Insurance Corporation ("FDIC"), with the FDIC appointed

as receiver. On the same day, Renasant Bank ("Renasant") acquired some of the assets of Crescent, including the loan at issue in this case.

Renasant later moved, as Crescent's successor in interest, for summary judgment in its favor based upon undisputed facts showing the maturity of the note, the unpaid balance, and the execution of the guaranties by the Strauses. It also contended that the counterclaim and defenses asserted by the Strauses were barred by the *D'Oench Duhme* doctrine and 12 U.S.C. § 1823 (e), that the guaranties signed by the Strauses waived their defenses and claims against Renasant based upon oral agreements, that their fraud counterclaim was barred by their lack of diligence in failing to determine the true interest rate for the promissory note as well as ratification, that no fiduciary duty was owed, and that the Strauses' rescission claim fails because it was first asserted in their answer.

Stancil also moved for summary judgment in his favor, asserting that the *D'Oench Duhme* doctrine prevents the Strauses' claims against him based upon unwritten side agreements, that the loan documents and guaranty preclude claims based upon on oral side agreements, that their fraud claim is barred by their lack of diligence in failing to ascertain the interest rate for the promissory note and by ratification, and that he owed no fiduciary duty to the Strauses. In a 20-page order,

4

the trial court granted summary judgment in favor of Renasant for all relief sought in its complaint as well as the Strauses' counterclaim. It also granted Stancil's motion for summary judgment on the Strauses' counterclaim and dismissed the counterclaim against him with prejudice.

1. We find no merit in the Strauses' contention that the trial court erred by concluding that the *D'Oench Duhme* doctrine precluded their defenses and counterclaim against Renasant. "Under the *D'Oench Duhme* doctrine, applied by the trial court, oral agreements not recorded in bank documents between debtors and failed banks will not be enforced against the FDIC or its successors." (Citation, punctuation and footnote omitted.) *Kessler v. Multibank 2009-1 CRE Venture, LLC*, 324 Ga. App. 474, 475 (751 SE2d 121) (2013). In this case, the Strauses' defenses and counterclaim are based upon allegations that they were fraudulently induced to enter into the individual guaranties based upon their "banking relationship" with Stancil dating back to the 1990s, their reliance upon Stancil's business advice, an alleged fiduciary relationship with Stancil, and their discussions with Stancil about the terms of the underlying note before they signed the guaranties. The defenses and

claims relating to Stancil's alleged misrepresentations about the interest rate for the promissory note clearly fall within the scope of the *D'Oench Duhme* doctrine.[3]

We are not persuaded by the Strauses' arguments that the doctrine should not be applied based on their claim that they are innocent of any wrongful action and fraud in the factum. The scope of the *D'Oench Duhme* doctrine is broad, *Resiventure, Inc. v. Nat. Loan Investors*, 224 Ga. App. 220, 222 (2) (480 SE2d 212) (1996), and both the Eleventh Circuit Court of Appeals and the Supreme Court of Georgia have rejected the argument that a claim of innocence can strip away the protection offered by the *D'Oench Duhme* doctrine. See *Baumann v. Savers Fed. S. & L. Assoc.*, 934 F.2d 1506, 1515-1516 (IV) (11th Circ. 1991); *Fed. Financial Co. v. Holden*, 268 Ga. 73, 74 (485 SE2d 481) (1997).

With regard to the Strauses' fraud in the factum argument, they averred in their affidavits that Stancil misrepresented the annual interest rate for the underlying note

---

[3] The more general fraudulent inducement claims and defenses also appear to be barred as well. See *Resolution Trust Corp. v. Dunmar Corp.*, 43 F3d 587, 593-596 (V) (A) (11th Circ. 1995) (*D'Oench Duhme* doctrine precludes tort actions based on representations related to ordinary banking transactions); *Lindley v. FDIC*, 733 F3d 1043, 1053-1054 (II) (B) (2) (11th Circ. 2013) (noting negotiation and representations intimately related to lending are at core of *D'Oench Duhme* doctrine). We need not expressly rule on this question, however, based upon our holding in Division 2 below that Stancil owed no fiduciary duty to the Strauses and the holding that their fraud claims fail because they cannot establish justifiable reliance.

at the time they signed their personal guaranties. In his deposition taken in connection with a case involving a different loan obtained from Crescent,[4] Barry Straus testified that he could not recall if he read "the loan agreement notes and guaranties that [he] signed with Crescent Bank." He testified that Stancil's "habit was to bring the documents by [his office] at the moment they [were] needed - - at the last second before they had to be signed and would not give copies of the completed documents in advance to us." He testified further "they were always brought by at the last second . . . if they're not signed now, it has to go back before the loan committee or here are the documents for renewal. If they're not signed by 5:00, it's 4:45, the loan is in default and we'll move on. You know, so it has to be signed now." Straus admitted that, as a licensed attorney,[5] he understood the significance of a written contract and his choice to sign a contract that he had not read. He also acknowledged that he did not read the contracts he signed with Crescent Bank after signing them and that nothing prevented him from doing so.

---

[4] The trial court relied upon depositions filed in the related cases in its summary judgment order.

[5] Straus is also a licensed medical doctor.

These facts do not support a claim of fraud in the factum with regard to the Strauses' guaranties. The evidence before us shows without dispute that the Strauses knew that they were signing a guaranty. They therefore cannot contend that their signature was procured without knowledge of the true nature of the document they were signing. See *Bellamy v. Resolution Trust Corp.*, 266 Ga. 630, 631 (1) (469 SE2d 182) (1996) (general test for fraud in the factum); *Southtrust Bank of Ga. v. Parker*, 226 Ga. App. 292, 293 (486 SE2d 402) (1997) (noting in holder in due course case that "fraud in the factum most often arises where the obligor is asked to sign a document and he does so because he is deceived into believing that the document is something other than a negotiable instrument"). As explained in more detail by the United States District Court for the Northern District of Georgia in a case involving the application of the *D'Oench Duhme* doctrine,

> [t]he test of the defense of fraud in the factum is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. The primary difference between these two types of fraud lies in the parties' understanding of the contract into which they are entering. If a party understands the nature of the contract [it is] executing but contends that there has been some material misrepresentation as to the obligations rising thereunder, only a fraud in the inducement claim will lie.

8

(Citations and punctuation omitted.) *Bank of the Ozarks v. Khan*, 903 FSupp.2d 1370, 1378 (III) (N.D. Ga. 2012).[6]

2. While the *D'Oench Duhme* doctrine might also preclude the Strauses' counterclaim against Stancil,[7] we need not decide this issue because the Strauses' claims fail for the alternative reasons relied upon by the trial court. Specifically, the lack of a fiduciary relationship and the Strauses' lack of diligence in reading the documents at issue.

(a) In support of their claim that Stancil owed them a fiduciary duty, the Strauses point to opposing counsel's statements during the summary judgment motion

[6] The Strauses remaining argument, that the *D'Oench Duhme* doctrine should not be applied based upon their inability to obtain potentially favorable discovery, does not alter this analysis. The record before us does not contain the discovery order at issue or a transcript of the hearing on the motion to quash. While the Strauses filed a motion for an extension of time to respond to Renasant and Stancil's summary judgment motions, they did not do so on the ground that they needed to obtain additional discovery. Moreover, the Strauses do not enumerate as error the trial court's ruling on the discovery issue. See OCGA § 5-6-40; *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) (appellate courts are precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors); *Fradenburg v. State*, 296 Ga. App. 860, 863 (676 SE2d 25 2009) (same).

[7] In *Hackfeld v. Hurren*, 167 B.R. 429 (W.D. Tex. 1991), a federal district court held that individual bank officers sued for making oral misrepresentations within the course and scope of their employment were also protected by the *D'Oench Duhme* doctrine, because holding otherwise would allow "an end run around" the doctinre. Id. at 434 (III).

9

hearing that Stancil "was an invited guest at a family wedding" and that the Strauses trusted him, as well as averments in their affidavits that their banking relationship with Stancil dated back to the 1990s, that Barry Straus sought Stancil's advice before investing in Interstate South, that both of the Strauses executed a personal guaranty of Interstate South's debt "as a result of the relationship with Stancil," that they "completely relied upon the business advice provided by Stancil as a result of the banking relationship . . . developed with him over the years," and that his involvement in their business ventures was "more intensive than any other bankers [they] have previously known." In his deposition taken in one of the related cases, however, Barry Straus admitted that he never hired Stancil to be his personal financial advisor and that he had his own accountant.

We find this evidence insufficient to establish a fiduciary relationship between Stancil and the Strauses. "Even if a party places special trust and confidence in a bank or its officers, this does not create a confidential or fiduciary relationship. . . . Creditors deal with debtors at arm's length, and do not stand in a fiduciary capacity in relationship to the debtor." (Citation and punctuation omitted.) *Phillips v. Atlantic Bank & Trust Co.*, 168 Ga. App. 590, 591-592 (3) (309 SE2d 813) (1983). See also

10

*May v. Citizens & Southern Nat. Bank*, 202 Ga. App. 217, 219 (1) (413 SE2d 780) (1991) (physical precedent only) (same). Stated differently,

> [t]he mere fact that two persons have transacted business in the past and that they have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.

(Citation and punctuation omitted.) *Gill Plumbing v. Jimenez*, 310 Ga. App. 863, 873 (2) (d) (714 SE2d 342) (2011).

For these reasons, the trial court did not err by granting summary judgment in favor of Stancil on the Strauses' claim for breach of fiduciary duty. See *First American Bank v. Bishop* 244 Ga. 317, 319 (1) (260 SE2d 49) (1979) (in-law relationship, solicitation of business with bank, promise to keep affairs confidential and to "treat plaintiff right" did not create confidential relationship between bank officer and bank customer).

(b) In their fraud claim against Stancil, the Strauses allege in their complaint that he "made material misrepresentations of fact to [them], including . . . that the interest rate charged in the Note being guaranteed by Defendants was the same as he

11

had originally agreed it would be. Additionally, Stancil concealed from [the Strauses] material facts which Stancil . . . had a duty to disclose." They further assert that they relied upon these misrepresentations when deciding to invest in Interstate South, guarantee the indebtedness of Interstate South, and make payments to Crescent on behalf of Interstate South. They allege that they suffered unspecified damages "in an amount which will be proven upon trial" as a result of Stancil's misrepresentations. In their affidavits, they contend that Stancil made false representations at the time they signed their guaranties; specifically, that the interest rate for the Interestate South note was lower than the rate actually inserted into the note. With regard to the portion of the Strauses' fraud claim based upon Stancil's alleged misrepresentations in connection with their decision to invest in Interstate South, the record contains no evidence regarding the specific misrepresentations.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). "To survive a motion for summary judgment in an action for fraud (including fraudulent inducement), a plaintiff must come forward with some evidence from which a jury could find each

of the [foregoing] elements." (Citations, punctuation and footnote omitted.) *JarAllah v. Schoen*, 243 Ga. App. 402, 403-404 (1) (531 SE2d 778) (2000). The Strauses' claims for fraud based upon unspecified misrepresentations that induced them to invest in Interstate South fail based upon a lack of evidence in the record showing any false representation. See *Kelson Cos. v. Feingold*, 168 Ga. App. 391, 396-397 (309 SE2d 394) (1983).

The Strauses' remaining fraud claims relating to their guaranties have no merit, because they cannot demonstrate justifiable reliance. "One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract." (Citations and punctuation omitted.) *Megel v. Donaldson*, 288 Ga. App. 510, 514 (2) (654 SE2d 656) (2007). "Diligence to detect fraud is as much incumbent upon a party who labors under no disability, as to do any other act in which is interest is involved. He must look about him, and see what villainies environ him. If he has been caught in a net he must feel for the meshes." (Citation and punctuation omitted.) *Maxey-Bosshardt Lumber Co. v. Maxwell*, 127 Ga. App. 429, 433 (193 SE2d 885) (1972).

Testimony that Stancil generally asked the Strauses to sign documents in a hurry does not provide a sufficient legal excuse for their failure to read the guaranty (and the note clearly referenced in the guaranty) at issue in this case. See *B. E. Robuck, Inc. v. Walker*, 212 Ga. 621, 623 (2) (94 SE2d 696) (1956) (plaintiff failed to present sufficient excuse for failing to read deed based upon allegation that defendant took deed from her hands when she tried to read it, that her reading glasses were inaccessible, and that defendant misrepresented contents of deed, "stating he was in a hurry"); *Etheridge v. Quality Hatchery, Inc.*, 101 Ga. App. 76, 76-77 (1) (112 SE2d 778) (1960) (no legal excuse for failing to read promissory note based upon allegation that plaintiff's agent "stated she was in a hurry and gave [defendant] no time to read"). The guaranty in this case expressly provided that it includes "Promissory Note # 130041701 In the Amount of $1,500,000.00 Dated 2/10/09" between Interstate South and Crescent Bank. And a cursory reading of the first page of the promissory note referenced in the guaranty would have revealed the interest rate for the note.

3. We cannot consider the Strauses' claim that the trial court lacked jurisdiction to enter a final money judgment in Renasant's favor after they filed a notice of appeal from the summary judgment order, because this court lacks jurisdiction to consider

14

it in this appeal. "An enumeration cannot be considered if the ruling it complains of was entered subsequent to the filing of the notice of appeal." (Citation and punctuation omitted.) *Costanzo v. Jones*, 200 Ga. App. 806, 811 (3) (409 SE2d 686) (1991). And "[o]rders entered subsequent to a notice of appeal are appealable only pursuant to a subsequently filed notice of appeal." Id. See also *Weeks v. Weeks*, Ga. App. (1) (751 SE2d 575) (2013); *Long v. Long*, 303 Ga. App. 215, 217 n. 2 (692 SE2d 811) (2010).

4. The Strauses' remaining arguments and enumerations of error are rendered moot by our holdings in Divisions 1 and 2.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*