**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 23, 2014**

# In the Court of Appeals of Georgia

A14A1366. BURDS v. HIPES et al.

BARNES, Presiding Judge.

Christopher Burds sued his former attorney, Jeanne Bynum Hipes, individually and doing business as Hipes Law LLC, claiming that Hipes fraudulently induced him to enter into a legal services contract with her and that she breached her fiduciary duty to him by misleading him about his case. Burds also sought punitive damages under OCGA § 51-12-5.1. Hipes answered and counterclaimed for $6,427 in unpaid legal fees, plus interest and the costs and expenses incurred in collecting the fees, per their contract. Both parties moved for summary judgment. After a hearing, the trial court denied Burds' motion and granted Hipes' motion for summary judgment. Burds appeals, and for the reasons that follow, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." OCGA § 9-11-56 (c). To obtain summary judgment, the moving party must demonstrate that he or she is entitled to judgment as a matter of law because no genuine issue of material fact exists for a jury to determine. *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) Id. at 624 (1) (a).

Both parties submitted affidavits to support their motions for summary judgment. The affidavits establish that Burds had a dispute with his former employer and consulted several lawyers who declined to take his case on a contingency fee basis before he retained Hipes to represent him. The essence of his claim was that his former employer had "misclassified" him as an independent contractor rather than an employee and was therefore liable to him for wages and other damages. He signed an employment contract engaging Hipes at $300 per hour "to provide legal advice and representation with respect to issues involving [Burds'] independent contractor

agreement, and damages recoverable if [he could] under current law be designated an employee rather than an independent contractor." Burds was required to deposit a retainer of $2,500 and agreed to replenish the retainer as it was applied to fees incurred, with any unused balance to be refunded to him once the engagement was complete. Interest of 1.5 percent per month would be assessed on any past-due fees and Burds would be responsible for attorney fees and costs incurred in collecting any unpaid balance. The contract specified that Hipes was working toward a settlement with Burds' former employer and that if it became necessary to file suit to pursue the claim, a different engagement agreement would be required with a different retainer. Hipes was to confer with Burds via email after every ten hours of completed work.

1. Burds contends that the trial court erred in granting summary judgment to Hipes on his fraudulent inducement/misrepresentation claim, which he based on two separate incidents. First, he contended that Hipes fraudulently represented to him that his misclassification claim had a potential value of $448,725 despite there being "no law or statute to support any damage estimates [Hipes] gave beyond minimum wage and overtime under Burds' factual scenario." By failing to disclose to Burds that no law supported a portion of her estimates of his possible damages, he asserts, "her valuation can be proven false and/or misleading as Hipes did not disclose this crucial

3

fact to Burds and thereby withheld material information needed by him to decide if his case was worth pursuing."

Burds further argues that Hipes fraudulently induced him to enter into the contract for services by failing to disclose to him early in her representation that she had decided she would not change their fee agreement to a "blended [hourly/]contingency." Burds initially asked Hipes to take his case on a straight contingency fee basis or on a "hybrid hourly/contingency fee basis" because his funds were limited. The parties dispute the exact tenor of Hipes' response – Burds stated that Hipes said it would have to be a "really good case" but that she had previously taken contingency cases, and Hipes stated that she told Burds she had never accepted a contingency case and had only once accepted a blended hourly/contingency rate in a case with excellent liability and damages. Hipes also stated that in response to his urging her to "think about it," she responded she would but "he should not get his hopes up."

Pretermitting whether Burds' claim is actually a professional malpractice claim, we find no error in the trial court's grant of summary judgment to Hipes on Burds' fraud claim. "The tort of fraud has five elements: (1) false representation by the defendant, (2) scienter, (3) an intention to induce the plaintiff to act or to refrain from

4

acting, (4) justifiable reliance by the plaintiff, and (5) damages." *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000). An expression of opinion or expectation cannot form the basis for an action in fraud. *Buckner v. Mallett*, 245 Ga. 245, 246 (1) (264 SE2d 182) (1980).

Hipes sent the email containing the alleged misrepresentation in response to Burds' request for "a clear understanding of the value of the case" and "a budget on filing a claim." Hipes responded that what Burds was asking for "is the essence of what we do and entails legal time and fees" because evaluating his potential damages required legal research. She told him that he "may be able" to recover certain damages, "probably could" require the employer to do other things, alternatively "might be able" to obtain other damages, "arguably" could rely on certain laws, other damages "might be recoverable" assuming certain facts, and if attorney fees were recoverable and if the case went to trial then those estimated fees could be included. Given all the assumptions, "assuming all stars lined up, the jury loved you," Hipes estimated that Burds "might be looking at a figure of $448,725." She then estimated that the cost of taking a case to trial could be as much as $200,000, and concluded that "the value of the case is dependent on many things ultimately, including what we

5

are able to find in our evaluation research." These are simply not assertions of fact that could support a fraud claim, and the trial court did not err in so concluding.

Similarly, the actual contract between Burds and Hipes explicitly states that Hipes would provide legal services at an hourly rate and Burds agreed to pay for all time expended on his claim. Nor is there any evidence that Hipes knew all along that she would not change their fee arrangement to a blended hourly/contingency one.

As the trial court correctly observed in its summary judgment order,

[t]he plain language of the Email and the Retainer Agreement contradict [Burds'] conclusion. The Email is, at [Burds'] urging, Hipes' very preliminary opinion of the Misclassification Claim under a best case scenario. The Email contains a number of disclaimers and conditional statements. Furthermore, it cannot be proven false, because [Burds] abandoned the Misclassification Claim.[1] As such it is not actionable. Furthermore, the Retainer Agreement explicitly states that Hipes is to be paid hourly. [Burds] may have wanted to believe his optimism would be rewarded and that Hipes would assume his risk of an unfavorable outcome. However, there is no reasonable basis for such an assumption, based on the clear language of the Email and the Retainer Agreement.

---

[1]The trial court noted that, although Burds initially alleged that Hipes caused him to lose his opportunity to pursue a misclassification claim against his former employer, he abandoned that argument in briefing and argued instead that his case could not succeed and that Hipes should not have taken it on an hourly basis.

6

Accordingly, the trial court did not err in granting summary judgment to Hipes on Burds' claim of fraud based upon a lack of evidence in the record showing any false representation. See *Straus v. Renasant Bank*, 326 Ga. App. 271, 278 (2) (b) (756 SE2d 340) (2014).

2. Burds asserts in separate enumerations that the trial court erred in granting summary judgment to Hipes and in denying his motion for summary judgment on his breach of fiduciary duty claim. In addition to the alleged misrepresentations discussed in Division 1, Burds also contends that Hipes breached her fiduciary duty to him by failing to inform him early on that he had little chance of being able to settle his case because there were no legal grounds to support it.[2]

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Footnote and punctuation omitted.) *Bedsole v. Action Outdoor Advertising JV*, 325 Ga. App. 194, 201 (4) (750 SE2d 445) (2013).

---

[2]While Burds argued to the trial court that Hipes breached her fiduciary duty to him by over-billing him for work that was not done or that was outside the scope of their contract, he does not make that argument on appeal. Hipes supported her billing statements with her affidavit, and Burds produced no evidence to counter her assertions.

7

There is no question that Hipes had a fiduciary duty toward Burds. Burds has presented no evidence, however, to support his contention that she breached that duty by failing to tell him soon after she began researching his case that his employment dispute was unsupported by any reasonable legal theory. His affidavit includes hearsay statements about what his former employer's CEO told him after Burds ended his contract with Hipes and what others lawyers told him about his case, but he produced no evidence establishing a question of fact in this regard. He argues that Hipes admitted in an email message to him that "many, maybe most lawyers" would have turned down his case because it was a difficult one, but Hipes' assertion that Burds' case was difficult is not evidence that it was untenable or that she breached her fiduciary duty by failing to tell him so.

Further, Burds argues that Hipes' email message to him within two weeks after their contract was signed about the difficulty of his case establishes her fiduciary breach because she knew early on how bad his case was, and her message to him after her representation ended shows that she knew all along that she was not going to change their agreement from an hourly fee for services to a blended hourly/contingency fee. Burds concludes that this is evidence sufficient to raise a jury

question regarding whether Hipes "misled" him into continuing to pay her fees even though she knew he had no case and thus, breached her duty to him.

But Hipes' early communication to Burds regarding the difficulty of his case also establishes that Burds was kept informed about the results of Hipes' legal research. Further, Burds already knew his case was difficult, as by his own admission several lawyers had turned him away before he approached Hipes, as did others after his relationship with her ended. Hipes' message to Burds after their attorney-client relationship ended simply reiterates what she said in her engagement letter, which was that she continued to evaluate whether his case could be taken under a blended arrangement until his former employer's new counsel, unlike its previous counsel, made it clear that the company would not consider settling the case.

Without evidence that Hipes breached her fiduciary duty to Burds, his claim fails. The trial court thus did not err in denying summary judgment to Burds and granting summary judgment to Hipes on the breach of fiduciary duty claim.

3. Finally, Burds contends that the trial court erred in granting summary judgment to Hipes on her counterclaim for breach of contract. He argues that his claims of fraud and breach of fiduciary directly affect the validity of the legal services contract between the parties and of Hipes' counterclaim for unpaid attorney fees, and

therefore, if this Court reverses the grant of summary judgment to Hipes on his fraud and fiduciary duty claims, then the trial court's ruling on the counterclaim was premature. As we have determined that the trial court did not err in granting summary judgment to Hipes on Burds' claims, the trial court also did not err in granting summary judgment to Hipes on her counterclaim for fees.

*Judgment affirmed. Boggs and Branch, JJ., concur*.