# FOURTH DIVISION
## DILLARD, P. J.,
## MERCIER and COLVIN, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 23, 2021**

# In the Court of Appeals of Georgia

A21A0095. RUBENSTEIN et al. v. PALATCHI et al.

MERCIER, Judge.

David Rubenstein (individually and as the beneficiary of the David M. Rubenstein Roth IRA), Sydnei Rubenstein (individually and as the beneficiary of the Sydnei T. Rubenstein IRA), and Sylvia Rubenstein (collectively, "the Rubensteins") sued Sabetay Palatchi and Jennifer Gold-Palatchi (collectively, "the Palatchis") for conversion, breach of fiduciary duty, fraud, conspiracy to commit fraud, punitive damages, attorney fees, and litigation expenses.[1] The trial could granted summary judgment to the Palatchis on all claims, and the Rubensteins appeal. For reasons that follow, we affirm the award of summary judgment to Jennifer Gold-Palatchi. As to

---

[1] The Rubensteins also alleged claims against various corporate entities, but those defendants are not involved in this appeal.

Sabetay Palatchi, we affirm the grant of summary judgment on the Rubensteins' conversion, breach of fiduciary duty, and conspiracy claims, but reverse the ruling on the claims for fraud, punitive damages, attorney fees, and litigation expenses.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the non-moving party. See *City of Atlanta v. Hotels.com*, 332 Ga. App. 888, 890 (2) (775 SE2d 276) (2015).

So viewed, the record shows that the Rubensteins and the Palatchis were family friends. In October 2010, David Rubenstein decided to lend $100,000 to General Financial, Inc. ("GFI"), a company owned and operated by the Palatchis that made high interest loans to active military personnel. Sabetay Palatchi told David that GFI's business was "booming," but that the company needed additional funding to expand its offerings to customers. Pursuant to an "Investor Agreement" signed by David and Sabetay, GFI agreed to pay David monthly interest on the loan at a 15-percent rate.

In July 2011, David lent GFI another $200,000. The parties consolidated GFI's indebtedness into one $300,000 promissory note that superceded the prior investor agreement. GFI continued to make timely interest payments, and in May 2012, David

2

added $200,000 to the loan amount, resulting in a consolidated promissory note of $500,000. According to David: "I was comfortable that [the Palatchis] would be able to use these additional funds in their business to generate more revenue, and [I] would then receive a greater amount of interest."

In addition to the $500,000 sum that he personally loaned to GFI, David also authorized his Roth IRA to loan GFI $100,000 in November 2011 in exchange for a promissory note. The following month, the IRA belonging to David's wife, Sydnei Rubenstein, loaned GFI $50,000. David's mother, Sylvia Rubenstein, also loaned GFI a total of $600,000 between 2011 and 2013.

In September 2014, the Rubensteins received an email from Sabetay stating that the Department of Defense ("DOD") was updating its regulations to reduce the amount of interest that could be charged on loans to military personnel. Understanding that the anticipated interest rate cap would significantly decrease the profitability of GFI's military consumer loans, David called Sabetay to discuss Sabetay's plans for the business. Sabetay indicated that although GFI was working to improve consumer loan profitability through advanced underwriting, he was not sure whether the regulation change would impact GFI's ability to make full monthly interest payments to the Rubensteins.

3

Between September 2014 and December 2015, David continued to discuss the business with Sabetay, who assured him that GFI was having success developing a new underwriting model. Sabetay also indicated that GFI would be able to make interest payments to investment lenders like the Rubensteins, but that he planned to ask lenders to cut their interest rates from 15 percent to 10 percent. David responded that he would not accept a reduced interest rate for his loans.

In December 2015, Sabetay provided a written update to David regarding GFI and the recently enacted DOD regulation that, beginning in October 2016, would lower the interest rates GFI could charge military customers. The update outlined a new organizational and debt structure for GFI, which would require investment lenders such as the Rubensteins to subordinate their loans to the rights of a new investor, a hedge fund known as Old Hill Partners. Sabetay explained:

> We will continue to make interest payments to [investment lenders] in the same monthly manner and at the same rate as we have completed historically. Nevertheless, since the [GFI] debt will be fully subordinated to the Old Hill Partners obligations, in the unlikely event of a default our ability to pay interest or principal could be prevented by Old Hill Partners.

Sabetay asked David for his continued support, as well as his consent to the new debt structure and loan subordination. Noting that some investment lenders might not be comfortable with these changes, Sabetay further stated:

> I have established the opportunity with Old Hill Partners whereby [GFI] is able to repay the [investment lenders] all outstanding principal and accrued interest as of the closing date of the new transaction if [an investment lender] elects not to participate in the proposed transaction. . . . We are seeking to close the transaction by this Friday, December 18, 2015. Please let me know if you wish to be repaid at the closing or would like to consent to the transaction.

The day after receiving the update, David met with Sabetay and GFI's CFO, Ron Ortell. Concerned about the viability of GFI, David's initial reaction was to remove the Rubenstein money from the company. In particular, he questioned whether GFI would be able to make payments to both Old Hill Partners and the original (now subordinated) investment lenders. David asked Sabetay and Ortell for detailed information about GFI's operations and profitability, and the two men provided data.

A day or two later, David called Sabetay to tell him that he wanted to withdraw his and his wife's money from GFI because he did not think that the principal would be safe. Sabetay responded that the new underwriting model worked very well, that

the default rates on the military consumer loans would be low, and that GFI would be a very profitable company. Sabetay assured him that the money was safe, noted that his own mother had invested in GFI, and urged David to trust him because they had "been friends for a long time." Following that conversation, David and Sydnei decided not to withdraw their money, and they agreed to subordinate their loans to Old Hill Partners, as requested. Sylvia also left her money with GFI and subordinated her loans.

In October 2016, Sabetay and Jennifer informed David that GFI was having financial issues; that, for the first time, GFI could not make the full monthly interest payments on the Rubenstein loans; and that GFI needed to reduce the interest rate. In response, David requested GFI's complete financial statements. GFI provided some information, but Sabetay failed to respond to other inquiries. David wrote to the Palatchis and GFI in November and December 2016, asserting that the Rubenstein loans were in default for failure to pay the full amount of required interest and declaring all amounts owed under the various promissory notes immediately due and payable.

GFI failed to repay the loans, and the Rubensteins filed suit against the Palatchis, GFI, and several other corporate entities. As to the Palatchis, the

6

Rubensteins alleged claims for conversion, breach of fiduciary duty, fraud, conspiracy to commit fraud, punitive damages, attorney fees, and litigation expenses. The Palatchis moved for summary judgment on these claims, and the trial court granted their motion. This appeal followed.

1. *Conversion*. A conversion results when, without authority, a party exercises the right of ownership over, assumes dominion over, or appropriates personal property belonging to another party, in hostility of that other party's rights. See *City of Atlanta*, supra at 890-891 (2) (a). To establish a conversion claim, a plaintiff must demonstrate that (1) he or she owns title to or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it. See id. at 891 (2) (a).

In two claims, the Rubensteins allege that the Palatchis converted money that the Rubensteins loaned to GFI by wrongfully retaining and misappropriating the loan proceeds. Generally, however, money is not the type of personal property subject to a conversion claim because it is intangible, fungible, and "belongs to a class of property which cannot be differentiated by specific identification[.]" *City of Atlanta*, supra (citation and punctuation omitted). A money-based conversion claim may

7

proceed only if the money comprises "a specific, separate, identifiable fund" set aside from other money. Id. (citation and punctuation omitted).

The Rubensteins argue that the Palatchis misappropriated "identifiable monies and profits" of GFI that should have been used to make interest payments and repay principal on the Rubenstein loans. But they have not pointed to any evidence that the money they loaned to GFI was segregated from other monies or earmarked as a separate, identifiable fund. Rather, the record shows that GFI deposited the loan proceeds into its general operating fund, intermingling those proceeds with other monies used for general working capital. As even David admitted, "there would be no way to tell one dollar from the next" in the general operating fund.

The Rubensteins' effort to characterize their claims "as . . . for specific money rather than a certain amount of money generally" lacks evidentiary support. See *City of Atlanta*, supra. At base, their allegations "concern[] nothing more than a failure by [the Palatchis] to pay back money allegedly owed to the [Rubensteins]." Id. at 892 (2) (a) (citation and punctuation omitted). Given these circumstances, the trial court properly granted the Palatchis summary judgment on the conversion claims. See id.; *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 239 (5) (659 SE2d 668) (2008) (plaintiff's capital contribution was not part of a "specific" fund subject to a

8

conversion claim where evidence showed that all capital contributions were combined together and used for business expenses).

2. *Breach of Fiduciary Duty.* The complaint alleges that the Palatchis, who were both officers of GFI, breached their fiduciary duty to the Rubensteins. The trial court rejected this claim, concluding that the record lacks evidence of any such breach. We find no error.

The Rubensteins argue that the Palatchis owed them a fiduciary duty because they placed their trust and confidence in the Palatchis, who had responsibility and authority over the money they loaned to GFI. But no fiduciary duty typically arises between a borrower and a lender. See *Gwinnett Community Bank v. Arlington Capital*, 326 Ga. App. 710, 716 (1) (b) (757 SE2d 239) (2014). And as we have explained,

> the mere fact that two persons have transacted business in the past and that they have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.

9

*Straus v. Renasant Bank*, 326 Ga. App. 271, 276-277 (2) (a) (756 SE2d 340) (2014) (citation and punctuation omitted).

Moreover, although the Rubenstein and Palatchi families were close friends, friendship alone does not give rise to a fiduciary relationship. See *Arko v. Cirou*, 305 Ga. App. 790, 795 (1) (700 SE2d 604) (2010). Simply put, no confidential relationship exists

> between close friends with regard to a transaction in which they are not joined together as partners, promoters, joint venturers, or otherwise to achieve a common business objective, but instead are engaged in a business transaction with each other in an effort to advance their own separate objectives.

Id. at 796 (1) (citation, punctuation, and emphasis omitted).

The record does not contain evidence of a common business objective here. The Rubensteins were lenders with respect to GFI; they held no ownership or equity interest in the company. They simply sought a return on their money through a pre-established interest rate. The Palatchis, on the other hand, wanted to build a business. This lender-borrower business transaction did not create a fiduciary relationship. See *Arko*, supra. Accordingly, the Rubensteins have not demonstrated that the trial court

erred in granting the Palatchis summary judgment on the fiduciary duty claim.[2] See id.; *Straus*, supra at 277 (2) (a); *Arko*, supra at 796-797 (1).

3. *Fraud*. The tort of fraud has five elements: (1) a false representation by the defendant; (2) scienter; (3) an intent to induce the claimant to act or refrain from acting; (4) justifiable reliance by the claimant; and (5) damage to the claimant. See *Ades v. Werther*, 256 Ga. App. 8, 11 (2) (567 SE2d 340) (2002). To support their fraud claim, the Rubensteins argue that they agreed to subordinate their loans to Old Hill Partners, rather than withdraw their money from GFI, in reliance on the Palatchis' misrepresentations regarding GFI's financial health. The trial court rejected this claim, finding no evidence of a misrepresentation.

(a) We agree with the trial court's conclusion with respect to Jennifer Gold-Palatchi. The Rubensteins have not cited any statements made by *Jennifer* that they relied upon in deciding whether to subordinate their loans and leave their money with

---

[2] We recognize that if a corporation becomes insolvent, "its directors are bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *Gwinnett Community Bank*, supra at 716 (1) (b) (citation and punctuation omitted). The Rubensteins, however, do not argue on appeal that this principle applies or gives rise to a fiduciary duty in this case. On the contrary, they claim that the trial court erred to the extent it "required [GFI] to be insolvent for the Palatchis to owe a fiduciary duty to creditors of the company."

11

GFI. In fact, David, Sydnei, and Sylvia Rubenstein all testified that they did not rely on anything that Jennifer said when making their decision in 2015. Although they argue on appeal that Jennifer proofread several documents written by Sabetay, they have pointed to no evidence that these documents factored into their decision. The trial court, therefore, properly granted Jennifer summary judgment on the fraud claim. See *Sun Nurseries v. Lake Erma*, 316 Ga. App. 832, 836 (1) (730 SE2d 556) (2012) ("[P]laintiff's failure to establish even one of these elements [of fraud] entitles a defendant to summary adjudication.").

(b) As to the fraud claim against Sabetay, however, we find that questions of fact remain. David testified that when he met with Sabetay and Ortell in December 2015 to discuss GFI's subordination request, he asked for financial information relating to GFI and its profitability. Specifically, he sought to determine whether the company would be able to make required payments on the Rubenstein loans following a subordination. Sabetay and Ortell provided various financial numbers that, David now contends, were inaccurate. According to David, for example, Sabetay and Ortell understated GFI's overhead costs, making the company "look more profitable than it was." Although David could not remember exactly what information each man provided, he testified that both offered definite, specific numbers that

12

inaccurately portrayed the overall financial health of GFI. Given this testimony, a question of fact remains as to whether Sabetay misrepresented GFI's financial position to induce the Rubensteins to consent to the subordination and leave their money with GFI.[3]

On appeal, Sabetay argues that the Rubensteins failed to exercise due diligence in analyzing the transaction and unreasonably relied upon his representations. Justifiable reliance, however, is generally an issue for the jury. See *Ades*, supra at 11 (2) (a). The record shows that David asked for GFI's financial information, was told that the "financial statements for the year were not yet available," and received financial numbers directly from Sabetay. It further shows that the Rubensteins only had a few days to decide whether they wanted to subordinate their loans and leave their money with GFI. Under these circumstances, a jury questions remains as to whether the Rubensteins justifiably relied on the information provided by Sabetay. See id.

Because "fraud is inherently subtle, a claimant may survive summary judgment if there is slight, circumstantial evidence supporting a fraud claim." *Ades*, supra. The

---

[3] Sydnei and Sylvia testified that David passed along the information gleaned from these discussions to them.

Rubensteins offered sufficient evidence to avoid summary judgment with respect to their fraud allegations against Sabetay. The trial court, therefore, erred in granting Sabetay summary judgment on this claim.

4. *Conspiracy*. "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *J. Kinson Cook of Ga. v. Heery/Mitchell*, 284 Ga. App. 552, 560 (e) (644 SE2d 440) (2007) (citation and punctuation omitted). The complaint alleges that Sabetay, Jennifer, and Old Hill Partners conspired to defraud the Rubensteins by making materially false and misleading statements that induced the Rubensteins to subordinate their loans and leave their money with GFI. The trial court granted summary judgment to the Palatchis on this claim after determining that no questions of fact remained as to fraud, the tort underlying the alleged conspiracy. See id. ("Absent the underlying tort, there can be no liability for civil conspiracy." (citation and punctuation omitted)).

The Rubensteins challenge the trial court's ruling, arguing that because "the Fraud claim against the Palatchis was dismissed in error, the Conspiracy to Defraud claim should be reinstated." As discussed in Division 3 (b), we agree with the Rubensteins that questions of fact remain as to the fraud claim against Sabetay. But

14

no such issues exist as to their fraud claim against Jennifer. And they have not pointed to any evidence that Jennifer or Old Hill Partners knew that Sabetay had misrepresented GFI's financial situation or agreed to engage in a scheme with him to defraud. See *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 650 (3) (629 SE2d 468) (2006) (defendant entitled to summary judgment on conspiracy to defraud claim where claimant failed to present evidence that defendant knew about fraudulent misrepresentations and participated in a fraudulent scheme). The Palatchis, therefore, were entitled to summary judgment on the conspiracy to defraud claim. See id.

5. *Punitive Damages, Attorney Fees, and Litigation Expenses.* After granting summary judgment to the Palatchis on the Rubensteins' substantive claims, the trial court determined that the Rubensteins could not recover on their derivative claims for punitive damages, attorney fees, and litigation expenses. This ruling was correct as to Jennifer, against whom no substantive claim remains. See *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 52 (5) (668 SE2d 737) (2008) (claimant cannot prevail on claims for punitive damages and attorney fees if substantive claims fail as a matter of law). Because questions of fact exist as to the fraud allegations against Sabetay, however, he was not entitled to summary judgment on the claims for attorney fees, litigation expenses, and punitive damages. See *Stephen A. Wheat Trust*

15

*v. Sparks*, 325 Ga. App. 673, 682 (7) (754 SE2d 640) (2014). Accordingly, the trial court erred in entering summary judgment for Sabetay on those claims. See id.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Colvin, J., concur.*